**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Silvercreek Management, Inc. | Case No. 18 Civ. 5467 |
| Plaintiff, | |
| v. | |
| Jazz US Holdings Inc. and U.S. Bank National Association, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS BY U.S. BANK NATIONAL ASSOCIATION AS INDENTURE**
**TRUSTEE**

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

    A.    Allegations regarding the Indenture........................................................ 2

    B.    Plaintiff's Direction Letter to U.S. Bank. ............................................. 5

I.      RULE 12(B)(6) STANDARDS. ............................................................... 7

II.    PLAINTIFF'S DAMAGES CLAIMS ARE NOT RIPE FOR ADJUDICATION. ............ 7

III.   U.S. BANK CANNOT BE LIABLE FOR NOT FOLLOWING  THE MAY 7 DIRECTION. ............................................................................................... 10

    A.    The Trustee's Duties Are Limited By the Indenture. ........................... 10

    B.    Plaintiff's Claims for Declaratory Relief against U.S. Bank Should Be Dismissed............................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*ACE Secs. Corp. Home Equity Loan Trust v. DB Structured Prods.*,
5 F. Supp. 3d 543 (S.D.N.Y. 2014) .............................................................. 1, 5, 6, 7

*AMSAT Cable Ltd. v. Cablevision of Conn. Ltd. P'ship*,
6 F.3d 867 (2d Cir. 1993) ..................................................................................... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................. 7

*Bank of N.Y. Tr. Co. v. Franklin Advisers, Inc.*,
726 F.3d 269 (2d Cir. 2013) ............................................................................... 10

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
369 F.3d 212 (2d Cir. 2004) ................................................................................. 1

*Connecticut v. Duncan*,
612 F.3d 107 (2d Cir. 2010) ................................................................................. 9

*Cruden v. Bank of New York*,
957 F.2d 961 (2d Cir.1992) ................................................................................. 10

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
282 F.3d 83 (2d Cir. 2002) ................................................................................... 8

*Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*,
838 F.2d 66 (2d Cir.1988) ............................................................................. 10, 18

*Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*,
958 F. Supp. 2d 507 (S.D.N.Y. 2013) ................................................................... 8

*Kiobel v. Royal Dutch Petroleum Co.*,
621 F.3d 111 (2d Cir. 2010) ................................................................................. 7

*Krys v. Pigott*,
749 F.3d 117 (2d Cir. 2014) ................................................................................. 7

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ............................................................................. 7, 8

*N.Y. Civil Liberties Union v. Grandeau*,
528 F.3d 122 (2d Cir. 2008) ................................................................................. 9

*Nat'l Org. for Marriage, Inc. v. Walsh*,
  714 F.3d 682 (2d Cir. 2013) ................................................................. 8

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003) ............................................................................. 8

*Quadrant Structured Prods., Co. v. Vertin*,
  23 N.Y.3d 549, 992 N.Y.S.2d 687, 16 N.E.3d 1165 (2014) .................... 10

*Reno v. Catholic Soc. Servs., Inc.*,
  509 U.S. 43 (1993) ............................................................................... 8

*Simmonds v. INS*,
  326 F.3d 351 (2d Cir. 2003) ................................................................ 8

**Statutes**

15 U.S.C. 77ooo(a)(1) ............................................................................. 11

15 U.S.C. §§ 77aaa ................................................................................. 1

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................. 2

Rule 12(b)(6) ......................................................................................... 2

# INTRODUCTION[1]

Plaintiff Silvercreek Management, Inc. ("Plaintiff") has asserted claims for declaratory judgment, breach of contract, and breach of the Trust Indenture Act against U.S. Bank National Association ("U.S. Bank" or "Trustee"), in its role as indenture trustee under that certain Indenture dated March 25, 2014 (as amended from time to time, the "Indenture") between it and Jazz US Holdings, Inc. as successor issuer (the "Company"), and the Guarantors party thereto, governing the Company's 8% Convertible Senior Notes Due 2018 (the "Notes").[2]  Capitalized terms not otherwise defined shall have the meanings set forth in the Indenture.[3]

In this lawsuit, Plaintiff anticipates having a dispute with the Company in December 2018 when the Notes mature regarding whether it will be entitled both to convert the Notes (which are economically in the money) on a timely basis prior to maturity—and thus receive stock or the cash value of stock for its Notes instead of getting the principal amount on the Notes repaid—and also remain eligible to receive and retain the final semi-annual interest payment on the Notes (which Plaintiff alleges totals $1,554,120).  Through Plaintiff's claims for breach of the Indenture and of the Trust Indenture Act against the Trustee, Plaintiff attempts to drag the Trustee into its dispute with the Company.  Specifically, Plaintiff, purporting to hold a majority of the outstanding principal amount of the Notes, sent a direction letter to the Trustee on May 7,

---

[1] In addition to the Complaint's allegations, this Memorandum's facts are taken from documents that Plaintiff's complaint relies upon and public records, all of which are properly considered on a motion to dismiss.  *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *ACE Secs. Corp. Home Equity Loan Trust v. DB Structured Prods.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014).

[2] The Indenture and the Notes are subject to the Trust Indenture Act of 1939, 15 U.S.C. §§ 77aaa *et seq.*

[3] A true and correct copy of the Indenture is attached to the Declaration of Michael C. McCarthy ("McCarthy Decl.") at Ex. A.

2018 (the "<u>May 7 Direction</u>")[4] directing the Trustee to use its powers under the Indenture to make sure that the Plaintiff prevailed in its expected dispute with the Company.  Now the Plaintiff is suing the Trustee for its failure to take action in response to the May 7 Direction.

Plaintiff has not stated a claim against the Trustee upon which relief may be granted under either the Indenture or the Trust Indenture Act for several reasons.  First, its damages claims are not ripe for adjudication in that they depend on the anticipated reaction of the Trustee to actions or inactions by the Company that may or may not occur in the future.  Separately, Plaintiff's purported May 7 Direction to the Trustee is deficient in several independent respects, any one of which relieves the Trustee of any duty to follow it.  Cardinal among these reasons is that Plaintiff's claim to both consideration for timely conversion prior to maturity of the Notes *and* to interest payable to holders of record as of the maturity date is not supported by the Indenture and the Trustee has no power to make it so.  Accordingly, Plaintiff's damages claims (its Second and Fifth [Alternative] Causes of Action) should be dismissed under Federal Rule of Civil Procedure 12(b)(1), and all of its claims against the Trustee fail to state a claim and should therefore be dismissed under Rule 12(b)(6).

## THE COMPLAINT

### A.      Allegations regarding the Indenture.

Plaintiff contends that it should be entitled to both convert its Notes shortly before the December 31, 2018, Maturity Date of the Notes, and receive both consideration for its conversion and also interest accruing from July 15, 2018, through the Maturity Date, which is the date the principal amount on the Notes becomes due.  The Indenture and the Form Note define Regular Record Dates—the dates on which the Company determines who are the Holders for

---

[4] A true and correct copy of the May 7 Direction is attached to the McCarthy Decl. at Ex. B.

purposes of receiving interest during that interest period—as June 30 and December 31. (McCarthy Decl., Ex. A § 1.01 and Form Note [Ex. A at A-3].)  Plaintiff alleges the "well-established convention in the U.S. convertible securities market is to establish and publish a 'record date' sufficiently in advance of the last day for submission of conversion notes for such holders to qualify for the final interest payment."  (Complaint ¶ 13.)  Accordingly, Plaintiff alleges that the Company must set such a record date, which Plaintiff contends will permit it to receive a final interest payment after the conversion of its Notes.  Plaintiff asserts that the purported intention of the Company to not set a record date before Plaintiff is required to convert its Notes would "deprive [Plaintiff] and other would-be converting Noteholders of the ability to obtain the final interest payment," because the last day for holders of the Notes to submit a Conversion Notice is Friday, December 28, 2018.  (*Id.* ¶ 16.)

Plaintiff concedes, however, that the "general rule" under Section 11.02(d) of the Indenture is that "[u]pon conversion of a Note, a Holder will not receive any cash payment representing accrued and unpaid interest . . . ."  (Complaint ¶ 29.)  In other words the general rule is that the conversion consideration for Notes converted includes interest that has accrued since the last payment.  Once converted, the Note is deemed paid in full.  (McCarthy Decl., Ex. A, Section 11.02(d).)  Plaintiff argues that the second sentence of Section 11.02(e) creates two exceptions to the general rule.[5]  (*Id.* ¶ 30.)  The first exception relates to Notes that are converted

---

[5] This sentence of Section 11.02(e) states as follows:  "Such Notes, upon surrender for conversion, must be accompanied by cash or immediately available funds equal to the amount of interest (including any Additional Interest) payable on such Interest Payment Date on the Notes so converted; *provided* that no such payment need be made (i) if the Company has specified a Repurchase Date that is after a Regular Record Date but on or prior to the next succeeding Interest Payment Date or (ii) with respect to any Notes converted after the Regular Record Date immediately preceding the Maturity Date."

in the two-week period between a Regular Record Date as established by the Indenture (June 30 or December 31) and the next succeeding Interest Payment Date (which fall on July 15 and January 15 under the Indenture).  (*Id.* ¶¶ 18, 28, and 30.)  Under the so-called first exception, a Noteholder converting between the Regular Record Date and the next Interest Payment Date receives interest, but must make an offsetting payment to the Company of the interest upon conversion in the amount of the interest received.  (*Id.* ¶ 31.)  In other words, this "exception" technically allows for the payment of interest, but a converting Noteholder must pay back the interest when it seeks to convert.  Plaintiff does not assert this exception is applicable.

The second purported "exception" under Section 11.02(e), according to Plaintiff, is "with respect to any Notes converted after the <u>Regular Record Date immediately preceding the Maturity Date</u>."  (Complaint ¶ 30 (underlining added by Plaintiff).)  Plaintiff asserts that the purported second exception relates to Notes converted after June 30, 2018 (the last Regular Record Date before the Maturity Date), and that this exception requires a final interest payment to the converting Noteholder, but does not require an offsetting payment upon conversion.  (*Id.* ¶ 33.)  Plaintiff, however, has selectively and misleadingly quoted Section 11.02(e).

The first sentence of Section 11.02(e), in its *entirety*, states as follows:

> Notwithstanding Section 11.02(d), if Notes are converted after the Close of Business on a Regular Record Date but prior to the next succeeding Interest Payment Date (*<u>other than the Regular Record Date immediately preceding the Maturity Date</u>*), Holders of such Notes at the Close of Business on such Regular Record Date will receive the interest payable (including Additional Interest) on such Notes on the corresponding Interest Payment Date notwithstanding the conversion.

(McCarthy Decl., Ex. A § 11.02(e) (emphasis added.).)  In other words, the first sentence of Section 11.02(e) specifically states that only Noteholders who convert their Notes after a Regular Record Date "other than the Regular Record Date immediately preceding the Maturity Date" are

entitled to interest.  Plaintiff concedes that the last Regular Record Date prior to the Maturity

Date is June 30, 2018. (Complaint ¶ 35.)  Thus, Section 11.02(e) does not, by its terms, require

the payment of interest to any Noteholder who converts between July 15, 2018 and the Maturity

Date—December 31, 2018.  The second sentence states that any such converting Noteholders are

also excepted from having to make any offsetting interest payment upon conversion, which

follows from the fact that such Noteholders are not entitled to a final interest payment in the first

place under this section.

### B.      Plaintiff's Direction Letter to U.S. Bank.

Not satisfied with the Company's position, Silvercreek sought assistance from the

Trustee under the Indenture, U.S. Bank." (Complaint ¶ 42.)  Plaintiff alleges that it provided the

Trustee with examples of other indentures under which it has received or will receive a final

interest payment in connection with the exercise of its conversion rights. (*Id*. ¶ 43.)

Plaintiff ultimately sent a "formal notice under the terms of the Indenture dated May 7,

2018" (i.e., the "May 7 Direction") directing the Trustee "to exercise any and all trusts and

powers conferred on U.S. Bank under the Indenture, including but not limited to interceding with

DTC, [Jazz US] and others responsible for the administration of the Notes to conform their

Applicable Procedures and any other business practices to the terms and conditions of the

Indenture and the Notes so as to preserve the rights of converting Holders to obtain the final

interest payment" from Jazz US upon Plaintiff's conversion of the notes. (Complaint ¶ 44.)

Plaintiff further alleges that it "complied with the Indenture by offering to indemnify U.S. Bank

for acting in accordance with" its direction. (*Id.*)  The May 7 Direction, however, states only that

Plaintiff "does not believe that this direction presents and risk of loss, liability or expense to U.S.

Bank as Trustee . . . ." (McCarthy Decl., Ex. B)  The May 7 Direction further states that Plaintiff

"is prepared to provide the Trustee with indemnity satisfactory to the Trustee upon the good faith and reasonable identification, description and quantification of such risk." (*Id.*)

Plaintiff asserts that the Trustee's failure to follow the May 7 Direction is a breach of the Indenture. (Complaint ¶ 45.)[6]  Plaintiff's First Cause of Action, against Jazz U.S. and the Trustee, seeks a declaratory judgment requiring "Jazz U.S. and/or U.S. Bank to establish . . . a record date for entitlement to a final interest payment on the Notes . . . for and to those Holders who exercise the Conversion Privilege in the period from July 16, 2018 to and including December 28, 2018." (*Id.* ¶ 48.)  The Second Cause of Action alleges a breach of the Indenture by the Trustee, and states that, because "U.S. Bank has refused to take the direction from [Plaintiff] in the [May 7 Direction]," U.S. Bank is "in breach of its duties as Trustee under the Indenture and Notes." (*Id.* ¶ 55.)  The Fifth [Alternative] Cause of Action alleges a claim of breach of the Trust Indenture Act against the Trustee, and states that "[i]f, as and when it becomes impracticable to establish a record date for entitlement to a final interest payment on the Notes . . . there shall be a continuing Event of Default under the Notes and Indenture to which U.S. Bank will have negligently and/or in bad faith contributed (and of which U.S. Bank will have notice) in violation of Section 515 (sic) of the Trust Indenture Act, 15 U.S.C. 777ooo." (*Id.* ¶ 66.)  Plaintiff alleges damages against U.S. Bank in the amount of $1,554,120 plus interest and other costs and fees. (*Id.* ¶ 67.)

---

[6] Plaintiff alleges that the Trustee has refused the May 7 Direction on the grounds that an Event of Default does not exist under the Indenture.  Whether or not an Event of Default exists is relevant to determining a trustee's standard of care in fulfilling its duties under an indenture, and the lack of an Event of Default in this instance means that the Trustee is not held to a prudent person standard, but instead is simply bound to follow the express terms of the Indenture.  As is set forth in this brief, the Trustee has numerous bases for having not followed the May 7 Direction.

## ARGUMENT

## I.    RULE 12(B)(6) STANDARDS.

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the factual allegations are merely consistent with liability, but do not allow the court to reasonably infer the defendant is liable for the misconduct alleged, then the claim is speculative and should be dismissed. *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). The court accepts as true only well-pleaded, nonconclusory factual allegations. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft*, 556 U.S. at 1949-50). When a document relied upon by the plaintiff contradicts the complaint's allegations, the document controls, and the allegations are not accepted as true. *ACE Secs.*, 5 F. Supp. 3d at 551.

## II.    PLAINTIFF'S DAMAGES CLAIMS ARE NOT RIPE FOR ADJUDICATION.

As an initial matter, Plaintiff's Second and Fifth [Alternative] Causes of Action are based on a contingent series of speculative beliefs as to the consequences of a number of actions that may or may not occur in the future.  The claims are premised on Plaintiff's assertion that (1) if and when an administrative record date is set by the Company that Plaintiff believes deprives it of its entitlement to a final interest payment interest, and (2) if and when Plaintiff converts its Notes, and (3) if and when U.S. Bank fails to take actions consistent with its duties as Trustee in order to protect Plaintiff's claimed entitlement to a final interest payment, then (4) Plaintiff will incur damages as a result of whatever actions the Trustee either took or failed to take in the future.  These claims are hopelessly premature and should be dismissed for this reason alone.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction

has the burden of proving by a preponderance of the evidence that it exists." *Id.* Plaintiff's Second and Fifth Causes of Action are not ripe, and this is an independent basis to dismiss these claims.

"To be justiciable, a cause of action must be ripe – it must present 'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn. Ltd. P'ship*, 6 F.3d 867, 872 (2d Cir. 1993)). The purpose of that requirement is to "prevent[] a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002). The burden to plead ripeness falls on the plaintiff. *Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*, 958 F. Supp. 2d 507, 518 (S.D.N.Y. 2013).

The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). Constitutional and prudential ripeness are "overlapping" concepts, but "are not coextensive in purpose." *Simmonds v. INS*, 326 F.3d 351, 356–57 (2d Cir. 2003). "Constitutional ripeness is a doctrine that, like standing, is a limitation on the power of the judiciary," derived from Article III's Case or Controversy Clause; prudential ripeness, on the other hand, is a "more flexible doctrine" that allows judges to decide whether a case "will be *better* decided later." *Id.* at 357.

"[D]etermining whether a dispute is ripe for review requires a two-pronged analysis of (1) whether the issues presented to the district court are fit for review, and (2) what hardship the

parties will suffer in the absence of review." *Connecticut v. Duncan*, 612 F.3d 107, 113 (2d Cir. 2010). Both constitutional and prudential ripeness may be assessed using this same two-step inquiry. *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 n.9 (2d Cir. 2008).

Plaintiff's Second Cause of Action for Breach of Contract is based on the Trustee's failure to follow the May 7 Direction. The allegations in the Complaint and the language of the May 7 Direction underscore that claim's lack of ripeness. The May 7 Direction seeks to require the Trustee to take some unspecified actions in the future in order to remedy what it believes will be a future breach by Jazz U.S. of its obligations under the Indenture with a respect to a conversion of Notes by Plaintiff that has yet to occur. And Plaintiff, through its Second Cause of Action, seeks to hold the Trustee liable for breach of contract for failing to perform these unspecified actions to protect Plaintiff from the consequences of a future breach of the Indenture by Jazz U.S. that Plaintiff thinks will occur if and when Plaintiff elects to convert its Notes *and* Jazz U.S. takes some future action that Plaintiff believes will frustrate its purported right to receive a final interest payment. This cause of action is simply not ripe, as is abundantly evident by the possibility that Plaintiff could obtain a judgment for breach of contract based on a conversion of Notes that Plaintiff ultimately elects not to do.

Plaintiff's Fifth [Alternative] Cause of Action is even more speculative. Indeed, Plaintiff describes this cause of action by stating "[i]f, as and when it becomes impracticable to establish a record date for entitlement to a final interest payment on the notes . . . there shall be a continuing Event of Default . . . to which US Bank will have negligently or in bad/faith contributed . . . ." (Complaint ¶ 66.) Plaintiff is asking this Court to hold the Trustee liable for a breach of the Trust Indenture Act based on events that have not occurred and may never occur. Plaintiff's Second Cause of Action is simply not ripe for judicial review.

Finally, there is no hardship that Plaintiff will suffer in the absence of review.  Plaintiff's Second and Fifth [Alternative] Cause of Action seeks money damages, which will be equally available to Plaintiff should the speculative events it complains might occur actually take place in the future.  For these reasons, Plaintiff's Second and Fifth [Alternative] Causes of Action must be dismissed for lack of jurisdiction under Rule 12(b)(1).

### III.   U.S. BANK CANNOT BE LIABLE FOR NOT FOLLOWING  THE MAY 7 DIRECTION.

Under New York law, an indenture is a form of contract.  *See, e.g., Bank of N.Y. Tr. Co. v. Franklin Advisers, Inc.*, 726 F.3d 269, 276 (2d Cir. 2013); *Quadrant Structured Prods., Co. v. Vertin*, 23 N.Y.3d 549, 559, 992 N.Y.S.2d 687, 16 N.E.3d 1165 (2014).  Accordingly, an indenture should be construed using traditional contract interpretation principles.  *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir.1992).  Applying those principles to the Indenture demonstrates that Plaintiff's claims are without merit as a matter of law.

#### A.   The Trustee's Duties Are Limited By the Indenture.

U.S. Bank serves as Trustee for the Indenture and the claims against U.S. Bank are made against it in its role as Trustee.  Absent an Event of Default under the Indenture, "the duties of an indenture trustee are strictly defined and limited to the terms of the indenture."  *Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir.1988); *see also* Section 7.01 of the Indenture ("the duties of the Trustee shall be determined solely by the express provisions hereof and the Trustee need perform only those duties that are specifically set forth in this Indenture and no others, and no implied covenants or obligations shall be read into this Indenture against the Trustee").[7]  Plaintiff does not allege that there is currently an Event of Default.  While Section

---

[7] Provisions of the Trust Indenture Act that are referred to in the Indenture are incorporated by reference therein.  McCarthy Decl., Ex. A § 1.03.

6.05 of the Indenture states that "Holders of a majority in principal amount of the then outstanding Notes may direct the time, method and place of conducting any proceeding for exercising any remedy available to the Trustee or exercising any trust or power conferred on it," the "Trustee may refuse to follow any direction that conflicts with the law or this Indenture, that the Trustee determines may be unduly prejudicial to the rights of the other Holders of Notes, or that may involve the Trustee in personal liability."  Section 7.01(c)(iv) provides that "no provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it." Finally, Section 315(a)(1)[8] of the Trust Indenture Act also sets forth the Trustee's duties prior to an Event of Default and provides that "the indenture trustee shall not be liable except for the performance of such duties as are specifically set out in such indenture."  (15 U.S.C. 77ooo(a)(1).)  Plaintiff's only allegation relating to U.S. Bank's alleged violation of the Trust Indenture Act references an alleged violation of 15. U.S.C. 77ooo, which is the section of the Trust Indenture Act that contains the above limitation of the Trustee's duties.  (Complaint ¶ 66.)

### 1.    The May 7 Direction is Deficient in Numerous Respects.

Plaintiff's Second Cause of Action for breach of contract and Fifth [Alternative] Cause of Action against the Trustee are predicated upon its failure to act on the May 7 Direction. Because the May 7 Direction contains substantive and procedural deficiencies that either excuse the Trustee's inaction or would require the Trustee to take actions in contradiction to or not authorized by the Indenture, these claims against the Trustee fail as a matter of law.

---

[8] Plaintiff's Fifth [Alternative] Cause of Action alleges a violation of Section 515 of the Trust Indenture Act.  The Trustee presumes the Plaintiff intended to reference Section 315.

### a.     Plaintiff is Not a Registered Majority Holder of Notes.

As an initial matter, the May 7 Direction is defective because Plaintiff has not alleged and cannot allege that it is a registered Holder of the Notes nor has it alleged that it took steps necessary to establish its rights to direct the Trustee on behalf of the registered holder of all of the Notes, Cede & Co., when it unilaterally issued the May 7 Direction.  Section 6.05 of the Indenture confers a limited right upon Holders of the majority of the outstanding principal amount of the Notes to direct the actions of the Trustee.  "Holders" is defined as the person to whom Notes are registered by the Registrar.  Section 2.01(b) of the Indenture provides that the Notes were issued and can be held in the indirect holding system, stating that the Notes "…shall initially be issued in the form of one or more Global Notes and the Depository Trust Company ('DTC'), its nominees, and their respective successors, shall act as the Depository with respect thereto."   Cede & Co. as DTC's nominee is the registered Holder of all of the Notes, including the Notes that Plaintiff claims to have a beneficial interest in.[9]  Plaintiff alleges only that it "has investment authority and powers of attorney for and economic interests in the holders of $38,853,000 face amount of Notes" (Complaint ¶ 2), but it does not allege that it is a registered holder or that it has obtained the express authority to exercise the power of the registered holder when it made the May 7 Direction or thereafter.  Accordingly, Plaintiff's failure to establish itself as a Holder of record is a fatal defect with respect to the May 7 Direction, and Plaintiff's claims of breach of contract (Second Cause of Action) and breach of the Trust Indenture Act (Fifth [Alternative] Cause of Action), which are apparently also based on the Trustee's failure to follow the May 7 Direction, should be dismissed for this reason alone.

---

[9] The relationship between DTC and Cede & Co. is described on DTC's website.  *See, e.g.,* http://www.dtcc.com/settlement-and-asset-services/issuer-services/how-issuers-work-with-dtc

**b.**     **Plaintiff Did Not Offer the Required Indemnity to the Trustee.**

Section 6.05 excuses the Trustee from following any direction by the Holders of a majority of the outstanding principal amount of the Notes that may involve it in personal liability.  Section 7.01(c)(iv) provides that "no provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it."  Plaintiff alleges that it provided the required indemnity, but the language of the May 7 Direction contradicts Plaintiff's claim.  Rather than offering indemnity to the Trustee, the May 7 Direction refuses to do so, stating that Plaintiff "does not believe that this direction presents and risk of loss, liability or expense to U.S. Bank as Trustee," but that Plaintiff "is prepared to provide the Trustee with indemnity satisfactory to the Trustee upon the good faith and reasonable identification, description and quantification of such risk." (McCarthy Decl., Ex. B.)  Being prepared to consider granting indemnity is not the same as granting it with a legally enforceable contract and collateral security for the performance thereof.  For this separate reason, the May 7 Direction fails to meet the requirements of the Indenture, and any claims based on the Trustee's failure to act on the May 7 Direction should be dismissed.

**c.**     **The May 7 Direction is Impermissibly Vague.**

A direction to a trustee must be sufficiently clear and definite for the trustee to be able to understand and evaluate what concrete actions are being asked of it.  The May 7 Direction articulates a desired end goal—allowing Plaintiff to convert its Notes shortly before the Maturity

Date and also receive a final interest payment—but is incomprehensively vague as to how the Trustee should achieve this goal for the Plaintiff within the parameters of the Indenture.

The May 7 Direction states, in relevant part:

> Accordingly, Silvercreek as Majority Noteholder directs U.S. Bank as Trustee to exercise any and all trusts and powers conferred on U.S. Bank under the Indenture, including but not limited to interceding with DTC, the Company and others responsible for the administration of the Notes to conform their Applicable Procedures and any other business practices to the terms and conditions of the Indenture and the Notes so as to preserve the rights of converting Holders to obtain the final interest payment from the Company (without submission of any off-setting payment) upon a Holder's exercise of the Conversion Privilege in the period between the Regular Record Date immediately preceding the Maturity Date (*i.e.*, June 30, 2018) and the last date for exercise of the Conversion Privilege on December 28, 2018.

(McCarthy Decl., Ex. B.)  It is impossible to discern what concrete steps Plaintiff is asking U.S. Bank to take in its capacity as Trustee to prevent the anticipated nonpayment of interest following Plaintiff's anticipated conversion of its Notes in December.  It is completely unclear what Plaintiff is asking U.S. Bank to do with its reference to Applicable Procedures (which, as defined, relate to DTC's rules and procedures that govern the transfer or exchange of interests in any Global Note (*see* McCarthy Decl., Ex. A § 1.01)).  The lack of clarity in the May 7 Direction prevents the Trustee from being able to meaningfully assess what rights or duties the Trustee may have with respect to the request under the Indenture and applicable law, which it must do consistent with Section 6.05 (the "Trustee may refuse to follow any direction that conflicts with the law or this Indenture, that the Trustee determines may be unduly prejudicial to the rights of the other Holders of Notes, or that may involve the Trustee in personal liability").

### 2. The May 7 Direction Contradicts the Plain Language of the Indenture.

In addition to the problems with the May 7 Direction identified above, the objective of the May 7 Direction, which is to ensure that Plaintiff can both convert its Notes and receive a

final interest payment, appears to conflict with the express terms of the Indenture.  Put differently, Plaintiff's May 7 Direction appears to ask that the Trustee take actions (however ill-defined) that would violate the Indenture.

There is no dispute that the "general rule" under Section 11.02(d) of the Indenture is that "[u]pon conversion of a Note, a Holder will not receive any cash payment representing accrued and unpaid interest . . . ." (Complaint ¶ 29.)  Plaintiff argues that Section 11.02(e) creates two exceptions to the general rule, but its argument is contradicted by the unambiguous language of this Section.  While there is an exception to the general rule that relates to Notes that are converted in the two-week period between a Regular Record Date as established by the Indenture (June 30 or December 31) and the next succeeding Interest Payment Date (which fall on July 15 and January 15 under the Indenture), these Noteholders must make an offsetting payment upon conversion in the amount of the interest received.  (Section 11.02(e).)  Thus, while a Noteholder that converts between a Regular Record Date and an Interest Payment Date receive an interest payment, it must pay the interest payment back upon conversion.

Plaintiff's assertion that there is second "exception" under Section 11.02(e) is contradicted by a reading of Section 11.02(e) in its entirety.  Plaintiff ignores key language in the first sentence of the section, and focuses on language in the second sentence of 11.02(e), which states that Noteholders converting "after the Regular Record Date immediately preceding the Maturity Date" need not submit an accompanying interest payment upon conversion (as do Noteholders who convert between a Regular Record Date and an Interest Payment date).  The entire first sentence of Section 11.02(e), however, states as follows:

> Notwithstanding Section 11.02(d), if Notes are converted after the Close of Business on a Regular Record Date but prior to the next succeeding Interest Payment Date (*other than the Regular Record Date immediately preceding the Maturity Date*), Holders of such Notes at the Close of Business on such Regular

> Record Date will receive the interest payable (including Additional Interest) on such Notes on the corresponding Interest Payment Date notwithstanding the conversion.

(emphasis added.)  This provision does not authorize payment of interest to Noteholders converting after the "Regular Record Date immediately preceding the Maturity Date."  The last Regular Record Date prior to the Maturity Date is June 30, 2018, and therefore any Noteholder that converts from now until the Maturity Date—December 31, 2018—is *not* entitled to interest per Section 11.02(e).  The portion of the second sentence of 11.02(e) that Plaintiff focuses on, which states that any such converting Noteholders are also excepted from having to make an accompanying payment of interest upon conversion, must be read in the context of the first sentence, which does not authorize payment of interest to such converting Noteholders in the first place.  In other words, if a Noteholder converts after June 30, 2018, it does not receive a final interest payment, and it therefore does not need to pay back any interest upon conversion.

As is noted above, Section 6.05 of the Indenture provides that a "Trustee may refuse to follow any direction that conflicts with the law or this Indenture."[10]  Plaintiff's May 7 Direction, which directs the Trustee to somehow ensure that Plaintiff receive a final interest payment even if Plaintiff converts after the last Regular Record Date before the Maturity Date conflicts with the Indenture because Section 11.02 does not authorize such interest payment to a noteholder in Plaintiff's position.  Therefore, Plaintiff's allegation that the Trustee's failure to follow the May 7 Direction constitutes either a breach of the Indenture (Plaintiff's Second Cause of Action) or a violation of the Trust Indenture Act (Plaintiff's Fifth [Alternative] Cause of Action) cannot be reconciled with Section 6.05 of the Indenture, and should be dismissed.

---

[10] The Commentaries on Model Indenture Provisions notes that the "propriety" of this limitation on a Trustee's obligation to follow a direction letter is "obvious."  Commentaries on Model Indenture Provisions 1965, Model Indenture Provisions All Registered Issues 1967 and Certain Negotiable Provisions (American Bar Foundation 1971), § 5-12.

Plaintiff points to no language in the Indenture that authorizes the Trustee to change the Regular Record Date as defined by the Indenture or to otherwise set a record date that would somehow allow Plaintiff to receive a final interest payment in contradiction to the language of Section 11.02(e) and the Note itself.  Nor does Plaintiff suggest any basis, in the Indenture or elsewhere, for the Trustee to somehow force Jazz U.S. to change or set the record dates to Plaintiff's liking.  That is because there is no such basis in the Indenture, the Trust Indenture Act, or elsewhere.  Thus, even if the May 7 Direction did contain some concrete steps that Plaintiff was directing the U.S. Bank to take, U.S. Bank cannot be held liable for failing to follow Plaintiff's direction to do something it has no authority to do, and Plaintiff's Second and Fifth Causes of Action should be dismissed for this reason as well.

### B.   Plaintiff's Claims for Declaratory Relief against U.S. Bank Should Be Dismissed.

Plaintiff's First Cause of Action for declaratory relief against both Jazz U.S. and U.S. Bank has two bases: (1) Plaintiff's "entitlement to interest on its Notes in connection with its planned exercise of the Conversion Privilege in the period from July 16, 2018 to and including December 28, 2018," and (2) "Defendants' duty to establish a record date that honors rather than frustrates that entitlement."  As to the first basis, as is set forth in detail in Section III.A.2, above, Plaintiff's claimed entitlement is contrary to the plain language of Sections 11(d) and (e) of the Indenture.  With respect to the second basis, the cause of action as to the Trustee fails because U.S. Bank does not have, and cannot have, a duty as Trustee to either change the plain language of the Indenture or to set or change a record date when there is no basis in the Indenture for it to do so.  As is discussed in Section III.A, above, U.S. Bank's duties as Trustee are limited by the Indenture and Trust Indenture Act in a pre-Event of Default context to those that are strictly defined in the terms of the Indenture.  *See* Indenture, Section 7.01 ("the duties of the Trustee

shall be determined solely by the express provisions hereof and the Trustee need perform only those duties that are specifically set forth in this Indenture and no others, and no implied covenants or obligations shall be read into this Indenture against the Trustee"); *Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir.1988) (holding that, prior to an event of default, "the duties of an indenture trustee are strictly defined and limited to the terms of the indenture")  Thus the duties that Plaintiff claims give rise to its claim for declaratory relief *as to the Trustee* simply do not exist, and the Trustee is entitled to an order dismissing this claim as well.

## <u>CONCLUSION</u>

Because the real dispute is not with the Trustee, and because Plaintiff's claims against the Trustee are based entirely on future events that may or may not occur and are premised on duties that U.S. Bank does not have as Trustee of the Indenture, Plaintiffs' Complaint should be dismissed in its entirety.

Dated:  July 26, 2018                    **MASLON LLP**


By:  *s/Michael C. McCarthy*
      Michael C. McCarthy (NY Atty. #5394861)
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-4140
Telephone:  (612) 672-8200
Email:    mike.mccarthy@maslon.com

**ATTORNEYS FOR DEFENDANT**
**U.S. BANK NATIONAL ASSOCIATION, AS**
**TRUSTEE**